[Cite as *Barclay v. Barclay*, 2012-Ohio-1974.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| PAUL BARCLAY | : | |
| | : | Appellate Case No. 24883 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 00-DR-213 |
| v. | : | |
| | : | |
| LISA PHIPPS BARCLAY | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of May, 2012.

. . . . . . . . . . .

PAUL B. RODERER, JR., Atty. Reg. #0063936, Roderer Law Office, LLC, 4 East Schantz Avenue, Post Office Box 897, Dayton, Ohio 45409
        Attorney for Plaintiff-Appellant

TERRY L. LEWIS, Atty. Reg. #0010324, Terry L. Lewis Co.,LPA, 111 West First Street, Suite 1000, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Plaintiff-appellant Paul Barclay appeals from an order of the Montgomery County Common Pleas Court, Division of Domestic Relations, denying his motion to reduce

his child support obligation. Mr. Barclay contends that the trial court abused its discretion when it determined that he had failed to demonstrate a change in circumstances regarding his income sufficient to justify a reduction in his child support obligation. He further argues that the trial court erred by failing to exclude as income two one-time payments received following his termination from a consulting contract.

{¶ 2}     We conclude that the evidence of a change in circumstances depended upon the testimony of Mr. Barclay. The trial court specifically noted that it questioned Mr. Barclay's credibility, and our review of the record did not uncover any other evidence to support his claims. Thus, we conclude that the trial court did not abuse its discretion in deciding that Mr. Barclay had failed to prove the existence of a change of circumstances justifying a reduction in his child support obligation. Accordingly, the judgment of the trial court is affirmed.

## I.   The Evidence in the Record

{¶ 3}     Paul and Lisa Phipps Barclay were married in 1995 and divorced in 2001. They have one minor child as a result of the marriage. Of relevance hereto, Mr. Barclay was ordered to pay the sum of $478 per month as child support. In 2008, pursuant to an agreed order, that amount was increased to $875 per month.

{¶ 4}     Mr. Barclay claims to have co-founded The Original Australian Company, which owned Warmbat Australia, another company that he helped create. According to Mr. Barclay, he provided consulting services to Warmbat through another company, Sheepskin Direct, Inc., which he wholly owned. He contends that his services as a consultant were

terminated in July 2009, thereby resulting in a loss of $102,000 in income, or over ninety percent of his income.

## II.   The Course of Proceedings

{¶ 5}   In 2009, Mr. Barclay filed a motion to reduce child support.

{¶ 6}    The matter was referred to a magistrate, and hearings were held on April 28 and July 2 of 2010.   Following the hearings, the magistrate rendered a decision overruling the motion.   In that decision, the magistrate made the following findings:

During the two days of hearings on plaintiff's motion to reduce child support, plaintiff testified that he is self-employed.   He owns a business named Sheepskin Direct, Inc.   That business was incorporated in mid-2007.   The firm provided consulting services and website sale opportunities for an Australian LLC called Warmbat Australian.   In addition to ownership of Sheepskin Direct, plaintiff was one of ten shareholders of Warmbat stock.   He held the position of CEO with Warmbat until July 2009 when Warmbat terminated the consulting arrangement with Sheepskin Direct.

In a complex financial arrangement, Warmbat paid Sheepskin Direct which in turn provided the source of plaintiff's income.   That income was $102,000 salary plus undefined medical benefits, business expense reimbursements and bonus.

As a result of the terminated consulting contract, Warmbat and plaintiff reached an undisclosed settlement.   Plaintiff testified that he received two one-time payments from Warmbat, one for personal services and one for his company.

Plaintiff testified that since July 2009 his only source of income is from Sheepskin Direct. The company is still in operation and has expanded into the specialized market of sheepskin boot sales. He has created a new line of boots under the name Grand Lizard Australia. He testified there is no income from that business. Plaintiff is the sole shareholder in the Sheepskin Direct and Grand Lizard enterprises.

Plaintiff testified that he manages his money through three separate bank accounts: a personal checking account; Sheepskin direct, Inc. Consolidated account; and Sheepskin Direct Company checking account. Income from the business is initially deposited in the Sheepskin Direct accounts, business expenses paid and then funds transferred to his personal account. Funds in the personal account are then used to pay living expenses and other business expenses.

Defendant introduced copies of plaintiff's bank records for calendar year 2008 and 2009 pertaining to the three accounts. Those records reflect deposits made, checks paid, debit card withdrawals and other fees and charges. Plaintiff testified that his debit card withdrawals represent his daily business expenses. When asked, on cross examination, to state the purpose of writing checks in the amounts of $2,000, $3,400, $9,640 and higher, plaintiff stated that he had no recollection of writing the checks and could not explain for what the checks were written. The records reflect deposits in his personal account for the period of December 2007 through November 2008 of $207,646 and for calendar year 2009, $153,519. Some of those deposits were traceable from transfers from the Sheepskin Direct, Inc. account. The business account for Sheepskin Direct, Inc. reflects 2008 deposits totaling $171,528 and

$161,709 for 2009.

During the proceedings plaintiff was asked how he was able to sustain his life style without income. He responded that he borrows money from friends and family. He later added that he had made personal loans to his company with provisions for the Company to pay him back. He further stated that a $10,000 deposit to his personal account was 'probably a loan from my parents to keep me going.' Plaintiff provided no evidence to support these allegations.

On cross-examination plaintiff was asked to explain how he could afford extended vacations to Marco Island and the United Kingdom. He testified that his girlfriend funded the Marco Island vacation and his parents paid for the United Kingdom vacation. No supporting evidence was presented.

The Court has carefully examined the evidence presented and has considered the factors contained in R.C. 3119.01 regarding gross income and allowable business expenses. The Court has further weighed the credibility of plaintiff's testimony.

The Court finds plaintiff is an experienced well-versed entrepreneur in fields of international marketing and consulting. He is a founder and sole proprietor of various enterprises. His inability to recall significant financial transactions pertaining to his business raises concerns as to his credibility.

The Court finds that plaintiff has not met his burden of proof to support his motion to reduce his child support obligation. The child support obligation shall remain as previously ordered.

Thereafter, Mr. Barclay filed a request for findings of facts and conclusions of law.

He also filed objections to the magistrate's decision. The magistrate filed an amended decision, in which the following findings of fact were made:

> From the evidence presented at trial, this Court finds that plaintiff has deposited into his personal checking account a total of $153,519 in calendar year 2009 plus an additional $161,709 deposited into his Sheepskin Direct, Inc. account. The Court finds that since July 2009 (the month plaintiff's contract with Warmbat was terminated) plaintiff deposited substantial monies into both accounts as reflected in the magistrate decision of August 16, 2010.

> The Court further finds that plaintiff's lifestyle has not diminished as a result of the Warmbat contract termination. He continues to travel extensively both internationally and within the United States. The Court finds his testimony that a girlfriend paid for the trips or that monies may have been a loan from his family to cover these expenses is not credible.

> Further, the Court finds no evidence was presented that would indicate plaintiff is not able to meet his current living expenses.

{¶ 7} Mr. Barclay filed objections to the amended decision. The trial court affirmed the magistrate's decision upon a finding that Mr. Barclay failed to establish that he had suffered a loss of income sufficient to demonstrate a change in circumstances. The trial court noted that Mr. Barclay "never testified as to the exact amount of income he received." From the trial court's judgment affirming the magistrate's decision, Mr. Barclay appeals.

**III. The Trial Court's Decision Not to Credit Mr. Barclay's Testimony Was Reasonable; Therefore, its Decision that Mr. Barclay Failed to Prove a Change of**

**Circumstances Justifying a Reduction of Child Support Is Not an Abuse of Discretion**

{¶ 8}    Mr. Barclay presents the following two Assignments of Error:

{¶ 9}    "MR. BARCLAY'S TERMINATION FROM THE ORIGINAL AUSTRALIAN CAUSING A LOSS OF NINETY PERCENT OF HIS INCOME CONSTITUTED A CHANGE OF CIRCUMSTANCES.

{¶ 10}    "THE TRIAL COURT FAILED TO FOLLOW CHAPTER 3119 OF THE REVISED CODE IN DECIDING THIS CASE."

{¶ 11}    In his First Assignment of Error, Mr. Barclay argues that the trial court erred in finding that there was no change of circumstances sufficient to warrant recalculation of his child support order.    In his Second Assignment of Error, he contends that the trial court erred in considering the one-time payments made to him by Warmbat upon the termination of his consulting contract.

{¶ 12}    The general standard of review for decisions in domestic relations cases is abuse of discretion.    *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1980). Modification of child support orders is a matter that fits within this standard, and we may, therefore, reverse the trial court only for abuse of discretion.    *Woloch v. Foster*, 98 Ohio App.3d 806, 810, 649 N.E.2d 918 (2d Dist. 1994).    The term "abuse of discretion" is one that implies that a trial court's decision is unreasonable, arbitrary or unconscionable.    *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 13}    When modifying an order of child support, a trial court is required to comply with Chapters 3119, 3121, 3123, and 3125 of the Ohio Revised Code.    R.C. 3109.05(A)(3). In order to modify a child support order the trial court must first determine whether there has

been a change in circumstances. *Coffman v. Coffman*, 2d Dist. Greene No. 94–CA–104, 1995 WL 386926, *2 (June 28, 1995).

{¶ 14}  In this case, Mr. Barclay testified that in July 2009 he was terminated as a consultant for Warmbat and suffered a loss of $102,000 in income, which accounted for "over ninety percent of his income."   Of interest, we note that Mr. Barclay was not able to provide a filed tax return for the years 2008 or 2009.  He testified that he had not finished with the preparation of either return.  Nor did he introduce any evidence, other than his testimony, to substantiate the claim that he had been terminated by Warmbat.  He repeatedly referred to a settlement agreement between him and Warmbat, but vaguely implied that he was not permitted to talk about the terms of the settlement.  However, he went on to testify that he received two payments from Warmbat as settlement for any claims he might have against the company and that these were one-time, or non-recurring, payments.  He testified that these payments were in the amount of $15,000 and $85,000, and that he budgeted these payments to last him through March 2010.

{¶ 15}  Ms. Barclay introduced copies of bank account statements provided during discovery by Mr. Barclay.  One account, in Mr. Barclay's name only, showed deposits of over $90,000 from July 2009 until January 2010.  Another account, in the name of Sheepskin Direct, showed deposits during the same time period of almost $86,000.  Finally, a third account in the name of Paul Barclay d/b/a Sheepskin Direct showed deposits for that period of time in the amount of slightly over $7,000.

{¶ 16}  The statements for the account in Paul Barclay's name only showed that between November and December of 2009, Mr. Barclay issued checks in the sum of $3,699,

$2,000, $9,640, $10,000, $7,669 and various other smaller amounts. The statements do not indicate who received the checks. Mr. Barclay was unable to remember the nature of those checks. There was evidence that he purchased a spa valued at almost $9,000 after the termination, and that he took trips both in and out of the United States after the termination. With regard to the trips, he testified that they were financed by loans from his parents and girlfriend. No documentation was provided as to these accounts for 2010. Nor was there any documentation to support the claim that the payments of $85,000 and $15,000 were made in settlement of his termination or that they were non-recurring payments.

{¶ 17} In short, the only evidence of a loss of income is Mr. Barclay's testimony with regard thereto. But the trial court did not find Mr. Barclay's testimony to be credible.

{¶ 18} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily matters for the trier of facts to determine." *In re Guardianship of Smith,* 2d Dist. Clark No. 09 CA 69, 2010–Ohio–4528, ¶ 19, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The court of appeals "has an obligation to presume that the findings of the trier of fact are correct." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. "This presumption arises because the trial judge [or finder-of-fact] had an opportunity 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

{¶ 19} Because Mr. Barclay's proof of changed circumstances depended upon his testimony, which the trial court reasonably found not to be credible, we conclude that the trial court's finding of a failure of proof of changed circumstances is not against the manifest

weight of the evidence. Concomitantly, the trial court's decision not to reduce Mr. Barclay's child support obligation is not an abuse of discretion.

{¶ 20}    We next turn to the issue of the payments of $15,000 and $85,000 which Mr. Barclay testified   were one-time, non-recurring payments.   He argues that these payments are exempt from being included as income pursuant to R.C. 3119.01(C)(7)(e), and the trial court therefore erred by considering them as income for purposes of child support.

{¶ 21}    The question whether the trial court erred in finding that these payments constituted income for purposes of calculating child support is also dependent upon the credibility of Mr. Barclay's testimony.   Again, the trial court's decision not to credit Mr. Barclay's testimony was reasonable, given his vagueness and reluctance to offer corroborating evidence.   Therefore, we conclude that the trial court did not abuse its discretion by treating these payments as income.

{¶ 22}    The First and Second Assignments of Error are overruled.


## IV.  Conclusion

{¶ 23}   Both of Mr. Barclay's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.


Copies mailed to:

Paul B. Roderer, Jr.
Terry L. Lewis

Hon. Denise L. Cross